UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ARJEWUS WILLIS,

      Petitioner,

         v.                                   CAUSE NO. 3:25-CV-1020-PPS-AZ

WARDEN,

      Respondent.

OPINION AND ORDER

Arjewus Willis, a prisoner without a lawyer, filed a habeas petition challenging

the disciplinary decision (ISP-25-5-1820) at the Indiana State Prison in which a

disciplinary hearing officer (DHO) found him guilty of possessing a weapon in

violation of Indiana Department of Correction Offense 106. ECF 1.  Following a hearing,

he was sanctioned with a loss of one hundred eighty days of earned credit time.

Willis contends that he is entitled to habeas relief because correctional staff did

not confiscate his mattress as required by the departmental policy governing the

personal property of inmates when property has been altered. He also claims that the

administrative record lacks photographs of the mattress in which the alleged weapon

was found. I construe these contentions as an argument that the administrative record

lacks sufficient evidence to support the finding of guilt.

> [T]he findings of a prison disciplinary board [need only] have the
> support of some evidence in the record. This is a lenient standard,
> requiring no more than a modicum of evidence. Even meager proof will
> suffice, so long as the record is not so devoid of evidence that the findings
> of the disciplinary board were without support or otherwise arbitrary.

> Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

The administrative record contains a conduct report in which Officer Wagers represented that, on May 3, 2025, he conducted a search of Willis' cell with Sergeant Quinn. ECF 6-1. The search led to the recovery of a makeshift knife inside Willis' mattress. *Id.* Wagers' report was corroborated by a statement from Sergeant Quinn that was consistent with the conduct report. ECF 6-8. The conduct report also included a photograph of the makeshift knife. ECF 6-4.

It is true that the administrative record does not include a photograph of the mattress. I'm at a loss as to why that matters; the conduct report, witness statement, and photograph of the weapon constitute some evidence that Willis possessed a weapon as charged—and that's all there need be. Further, while the departmental policy governing personal property suggests that confiscation of the mattress might have been appropriate if it had been altered to conceal contraband,[1] the fact that correctional staff did not confiscate it is not enough to fatally undermine the other evidence in the administrative record. Therefore, the claim that the administrative record lacked sufficient evidence is not a basis for habeas relief.

---

[1] This policy is available at https://www.in.gov/idoc/files/policy-and-procedure/policies/02-01-101-Offender-Personal-Property.pdf. Willis specifically relies on the provision stating, "All prohibited property including altered property or contraband found by staff shall be seized." *Id.* at 13. It is unclear whether the mattress would have qualified as altered property under this policy.

Willis also contends that he is entitled to habeas relief because correctional staff denied his request for body camera footage and wall camera footage for the stated reason that there were no relevant recordings. Willis contends that he needed this evidence to show that Sergeant Quinn was not present in his cell during the cell search and that Officer Wagers had planted evidence. He further contends that, on June 11, 2025, Lieutenant Stone responded to his grievance seeking the footage by reviewing the wall camera footage and representing that he saw Sergeant Quinn enter Willis' cell as Lieutenant Stone escorted Willis to the showers. ECF 14-2 at 4-5.

"[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*

The administrative record includes the screening report which indicates that, on May 29, 2025, Willis requested only body camera footage and that correctional staff denied it because no footage existed. ECF 6-5. Willis attempts to establish the existence of relevant body camera footage by referencing departmental policies[2] and asserting that they require correctional staff to activate body cameras during cell searches.

---

[2] Unlike the departmental policy governing the personal property of inmates, the policies cited here are not publicly available, presumably due to security concerns as they relate to cell searches, video surveillance, and the use of body cameras.

However, even if departmental policy required the correctional officers to activate their body cameras, there is no indication that these officers followed the policy, that their equipment functioned properly, or that the body camera footage continued to exist at the time of screening three weeks later. Indeed, Willis appears to concede that the body camera footage did not exist. ECF 14-1 at 5 ("It is obvious that [the correctional officer] did not follow departmental policies when they did not activate their body cameras during the shakedown and search of Willis' cell."). It is not unreasonable to deny a request for evidence that does not exist.

Further, even assuming that Willis properly requested wall camera footage as he implies, the denial of this footage appears to be harmless error. According to Lieutenant Stone's response to Willis' grievance, the wall camera footage confirmed that Sergeant Quinn was present during the search, and there is no indication that this footage allowed for an unobstructed view into Willis' cell or otherwise would have supported Willis' theory of fabricated evidence. To the contrary, Lieutenant Stone's response describes only individuals entering and exiting the range, which implies that only the range connecting the cells in the cellhouse could be seen. Nor is there any substantial evidence suggesting that Sergeant Quinn was not present during the search. Though Willis has repeatedly attested to Sergeant Quinn's absence, he appears to lack personal knowledge given his attestation that he had been escorted away from his cell to the showers two minutes before Officer Wagers signaled that he had found the knife. ECF 14-1 at 2. Therefore, this claim is not a basis for habeas relief.

Willis argues that he did not receive adequate notice of the charges because he did not receive the conduct report within ten days of the offense as required by Indiana statute and departmental policy. Notice of the charges within a particular amount of time after the offense is not listed among the requirements for procedural due process for prison disciplinary proceedings enumerated in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and the Supreme Court of the United States has indicated that this list of requirements is exhaustive. *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 324 (1976)). Additionally, the failure to follow departmental policy or state law alone does not rise to the level of a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) (explaining that "state-law violations provide no basis for federal habeas relief"); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (finding that inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process").

Willis may also be attempting to invoke his right to receive notice of the disciplinary charge at least 24 hours prior to the hearing. *See Wolff*, 418 U.S. 539 at 564. The administrative record indicates that Willis was notified of the charge on May 29, 2025, and that the hearing occurred one week later on June 5, 2025. ECF 6-5; ECF 6-7. As a result, inadequate notice of the charge is not a valid basis for habeas relief.

Because Willis has not asserted a valid claim for habeas relief, the habeas petition is denied. If Willis wants to appeal this decision, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed *in forma*

*pauperis* on appeal because I find pursuant to 28 U.S.C. § 1915(a)(3) that an appeal in this case could not be taken in good faith.

As a separate matter, Willis filed a motion seeking leave to correct the certificate of service attached to his response to the respondent's Return to Order to Show Cause. ECF 14.[3] The proposed correction concerns only the certificate of service and does not alter the substance of Willis' response. Because the Court has considered Willis' response in resolving the petition and the requested correction causes no prejudice, the motion will be granted.

 For these reasons, the Court:

(1) GRANTS Arjewus Willis' motion to correct the certificate of service (ECF 14);

(2) DENIES Arjewus Willis' habeas corpus petition (ECF 1);

(3) DIRECTS the clerk to enter judgment and close this case; and

(4) DENIES Arjewus Willis leave to proceed *in forma pauperis* on appeal.


SO ORDERED on July 22, 2026.


/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT

---

[3] After Willis filed his habeas petition, I ordered the respondent to enter an appearance and file a response to the petition with the entire administrative record. ECF 4. The respondent submitted his return on April 9, 2026 [DE 6] and Willis filed his traverse on April 30, 2026. ECF 11.